IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTIAN N.,[1]                                         No. 6:19-cv-0484-HZ

           Plaintiff,                                OPINION & ORDER

    v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

           Defendant.

Sherwood J. Reese
Drew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401

    Attorney for Plaintiff

Billy J. Williams
United States Attorney
Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, the Court uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Heather L. Griffith
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

Plaintiff Christian N. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). The Court reverses the Commissioner's decision and remands this case for the immediate calculation and payment of benefits.

## PROCEDURAL BACKGROUND

Plaintiff applied for DIB on October 30, 2015, alleging an onset date of September 1, 2014. Tr. 183.[2] Plaintiff's date last insured is December 31, 2019. Tr. 19. His application was denied initially and again on reconsideration. Tr. 101–105; Tr. 107–109. On February 12, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 37. On April 27, 2018, the ALJ found Plaintiff not disabled. Tr. 17–30. The Appeals Council denied review. Tr. 1–3.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on bipolar disorder, generalized anxiety disorder, osteoarthritis, low testosterone, low thyroid, and high cholesterol. Tr. 202. At the time of his alleged onset date, he was 41 years old. Tr. 28. Plaintiff has a master's degree and past relevant work experience as an elementary school teacher and bartender. Tr. 28, 44.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 7.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the ALJ determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform their "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other

work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets his burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date, September 1, 2014. Tr. 19. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: dysfunction of joints – knees; asthma; osteoarthritis; affective disorder; anxiety disorder; and personality disorder; however, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 19–22. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations:

> [He] can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can occasionally kneel, crouch and crawl. He can occasionally reach overhead with the left, non-dominant upper extremity. He can tolerate occasional exposure to extreme cold and to pulmonary irritants. [He] can perform simple, routine task and can tolerate occasional contact with the general public and with coworkers. [He] cannot engage in team-based activities. He can tolerate occasional changes to work routines and processes.

Tr. 22. Because of these limitations, the ALJ concluded that Plaintiff could not perform his past relevant work. Tr. 28. But at step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as photocopy operator, inserting machine operator, and collator operator. Tr. 29. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 30.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence

4 – OPINION & ORDER

in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff argues the ALJ erred by failing to: (1) include in the RFC all the limitations assessed by Plaintiff's treating psychiatrist Dr. Mitchell; (2) provide legally sufficient reasons for rejecting the opinion of Plaintiff's therapist Rita Van Dyck; (3) give clear and convincing reasons for rejecting Plaintiff's testimony; and (4) provide sufficient reasons to discount the lay-witness testimony. Pl. Br. 2, ECF 8. The parties agree the ALJ erred and that the only issue for the Court to decide is whether this case should be remanded for further administrative proceedings or the immediate calculation and payment of benefits.

The Ninth Circuit has created a three-part credit-as-true rule for determining whether a case should be remanded for an immediate award of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). First, the ALJ must "fail[] to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion[.]" *Id.* Second, the record must be

"fully developed and further administrative proceedings would serve no useful purpose," *id.*, such that the record is "free from conflicts and ambiguities, and all essential factual issues have been resolved," *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal quotation marks omitted). Third, "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (footnote and citations omitted). However, even where all conditions of the credit-as-true rule are satisfied, the Court should remand to the Commissioner for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Id.* at 1021.

The first step of the credit-as-true rule is satisfied because the Commissioner concedes the ALJ erred. Def. Br. 5, ECF 13. The Commissioner argues this case must be remanded for further proceedings because: (1) Dr. Mitchell's medical opinion is contradicted by the reviewing consultants' opinions; (2) Plaintiff's activities of daily living ("ADLs") undermine his symptom testimony; and (3) Plaintiff's Global Assessment Functioning ("GAF") scores create serious doubt that he is disabled. Def. Br. 7–9.

Dr. Mitchell completed a Mental Residual Functional Capacity Assessment ("MRFC") of Plaintiff in November 2017. Tr. 432–35. Dr. Mitchell's treatment notes show Plaintiff's primary diagnosis is bipolar II disorder with rapid mood cycling, along with generalized anxiety disorder, social anxiety disorder (social phobia), and obsessive-compulsive disorder. Tr. 295–347. Dr. Mitchell opined that Plaintiff had between a "moderate" to "moderately severe" limitation in the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances" and "[t]he ability to sustain an ordinary routine without special supervision." Tr. 433. Dr. Mitchell further opined that Plaintiff had a "moderately severe" limitation in the "ability to complete a normal workday and workweek without interruptions

from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." Tr. 434. The MRFC defines a moderately severe limitation as one "which seriously interferes with the individual's ability to function in the designated area, and precludes the individual's ability to perform the designated activity on a regular and sustained basis for 8 hours per day, 5 days per week, or a comparable work schedule." Tr. 432. Dr. Mitchell concluded his assessment stating "[t]his is difficult to complete given [Plaintiff's] condition has been quite changeable and unstable. At times he is generally OK and unimpaired. But it is not predictable and he can quickly get into another mood state that impairs him in some of the ways noted on this form." Tr. 435.

Despite assigning Dr. Mitchell's opinion "great weight," the ALJ erred by failing to incorporate the doctor's "moderate" and "moderately severe" limitations into the RFC formulation. Tr. 27; *Garrison*, 759 F.3d at 1012–13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it[.]"). The Commissioner argues further proceedings are necessary because Dr. Mitchell's opinion is contradicted by the opinions of the State agency psychological consultants Drs. Ju and Buskirk. Def. Br. 7. The reviewing doctors "opined that Plaintiff was capable of simple, routine tasks, occasional public contact, no teamwork, and occasional changes to work setting." *Id.*; Tr. 79–81, 95–97.

It is the ALJ's responsibility "to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (citations omitted). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citation omitted). "If a treating or examining

doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)) (footnote omitted). "[E]ven when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" *Id.* (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).

Here, the ALJ afforded Drs. Ju and Buskirk's opinions only "partial weight," finding "greater restrictions [were] warranted due to Plaintiff's anxiety and depression-related confusion which preclude him from more complex tasks." Tr. 27. As discussed, however, the ALJ gave Dr. Mitchell's opinion "great weight." Therefore, the ALJ already resolved the conflict between the medical opinion evidence in favor of Dr. Mitchell; further proceedings are unnecessary. *See Garrison*, 759 F.3d at 1021 ("[P]recedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as . . . a 'useful purpose[.]'") (citations omitted).

The Commissioner next argues that additional proceedings are necessary to resolve the inconsistency between Plaintiff's symptom testimony and his ADLs. Specifically, the Commissioner notes Plaintiff's ability to father three sons as a stay-at-home father "mirror[s] the demands of a work environment" and conflicts with Plaintiff's symptom testimony. Def. Br. 8; Tr. 25–26. ADLs can form the basis for rejecting a claimant's symptom allegations where the ADLs either contradict the claimant's testimony or "meet the threshold for transferable work skills[.]" *Orn*, 495 F.3d at 639. However, an "ALJ must give 'specific, clear and convincing reasons' in order to reject the claimant's testimony about the severity of the[ir] symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Vasquez*, 572 F.3d at 591). In

order to reject Plaintiff's testimony "[t]he ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)).

In rejecting Plaintiff's symptom testimony, the ALJ surmised that his responsibilities as a "stay-at-home dad" for his three children demonstrated transferable work skills because raising children is "challenging both physically and emotionally, and requires elements of concentration, judgment, and persistence." Tr. 25. The ALJ, however, failed to explain how Plaintiff's ability to care for his school-aged children with the help of his mother and spouse demonstrate transferable work skills. The ALJ's finding ignores the reality that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).[3] Accordingly, Plaintiff's limited parenting responsibilities do not indicate transferable work skills.

The ALJ also mischaracterized the record in finding Plaintiff's ADLs undermined his subjective symptom testimony. To begin, "[t]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from his credibility as to his overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)); *see also Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984). Here, the ALJ relied on the third-party function

---

[3] "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons, and is not held to a minimum standard of performance, as she would be by an employer." *Garrison*, 759 F.3d at 1016 (quoting *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012)).

report completed by Plaintiff's spouse to show that he prepares meals, does laundry, cleans, drives, grocery shops, and manages the finances. Def. Br. 8; Tr. 25, 237–39. The third-party function report, however, indicates that Plaintiff requires help with childcare and chores, his mood is unstable, he forgets to eat when manic, cannot pay attention for more than 15 minutes, does not like to be outside the house, is reclusive, does not have friends, and "alternat[es] between deep depression and paranoia and complete elation." Tr. 235–42; *see also* Tr. 49 (Plaintiff testifying his mother helps with childcare whenever necessary); Tr. 284 (Plaintiff's mother reporting that she "often ha[s] to take over parenting his children" when his mood is unstable). The ALJ further relied on Plaintiff's own function report to show that he dines with friends weekly and attends family events monthly. Tr. 25, 219. However, the ALJ neglected to mention that Plaintiff reported participating in social gatherings less frequently and that he "often ha[s] to leave early because of [his] difficulties." Tr. 219. Consistent with Plaintiff's hearing testimony and diagnosis of bipolar disorder, his function report notes that he experiences mood swings, irritability, visual and auditory hallucinations, obsessive behavior and thoughts, depression, anxiety, paranoia, and panic attacks[.] Tr. 220.

The ALJ also selectively cited therapist Van Dyck's treatment records to show that Plaintiff cared for his mother and assisted her with yardwork after she fell and hit her head in June 2016. Tr. 25–26. The treatment record details that caring for his mother was a source of "severe stress," and that he described feeling the "same way he did just before he had the big collapse/breakdown resulting in quitting work." Tr. 493. The following week, Plaintiff reported he had "been rapidly switching mood within the same day," and skipped a weekend family camping trip so he could focus on self-care. Tr. 494. The ALJ further relied on the therapist's treatment notes to show that Plaintiff reportedly planned road trips and took "spur of the moment

trips to Salem." Tr. 25–26. However, the record shows Plaintiff's "spur of the moment trips" were due to "emotional overload" when he "lost it a few times" on his and his son's birthdays. Tr. 492. Regarding the road trip Plaintiff took with his family in June 2015, Plaintiff testified that the trip was "[p]retty much horribl[e] from the get-go," he lashed out and became verbally aggressive, "lost it on everyone," and had to abruptly end the two-week vacation halfway through the trip. Tr. 51–52. Van Dyck's treatment records illustrate that Plaintiff alternates between depression and mania with paranoid thoughts, hallucinations, and other psychological disruptions, which is entirely consistent with his symptom allegations. Tr. 483–98.

      Further, an ALJ may rely on ADLs to undermine symptom testimony "[o]nly if the level of activity [is] inconsistent with [c]laimant's claimed limitations[.]" *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). After listing the activities discussed above, the ALJ stated, without any elaboration, that Plaintiff's ADLs "undermine [his] assertions related to the intensity, persistency, and limiting effects of his physical and mental health symptoms." Tr. 25–26. In making this finding, however, the ALJ failed to cite specific symptom allegations and did not specify how the episodic nature of Plaintiff's bipolar disorder is inconsistent with his ADLs as he described them. *Smolen*, 80 F.3d at 1284; *see also Garrison*, 759 F.3d at 1017 (noting in the context of psychological impairments that "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement . . . [and] treat them as a basis for concluding a claimant is capable of working."). The record supports Plaintiff's testimony that he suffers from bipolar disorder with "mixed episodes" and "rapid cycling" between periods of normalcy, mania, and depression. Tr. 25–26, 47, 49–50. As Dr. Mitchell opined, Plaintiff's ability to function varies significantly from day-to-day. Tr. 435. The Court finds the ALJ erred by mischaracterizing the

11 – OPINION & ORDER

record and rejecting Plaintiff's symptom testimony based on his ADLs. Accordingly, the second prong of the credit-as-true analysis is satisfied because there are no unresolved conflicts or ambiguities in the record that necessitate further administrative proceedings.

Under the third prong of the analysis, crediting the improperly rejected evidence as true directs a finding of disability. As discussed, Dr. Mitchell opined that Plaintiff cannot "complete a normal workday or workweek without interruptions from psychologically based symptoms." Tr. 433–34. The Vocational Expert ("VE") testified that an individual with this limitation would be precluded from all work in the national economy. Tr. 65. Taken together, Dr. Mitchell's opinion and the VE's testimony show that Plaintiff is unable to "engage in any substantial gainful activity" and is therefore disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(1)(A).

Nonetheless, the Commissioner argues that the Court should have serious doubts that Plaintiff is as limited as he alleges because Dr. Mitchell's treatment notes contained some mild GAF scores.[4] The ALJ afforded the GAF scores "some weight" because they were "consistent with the residual functioning reflected in the claimant's reported daily living tasks and in his treatment records." Tr. 26. As the Commissioner notes, however, the GAF scores reflect Dr. Mitchell's assessments of Plaintiff's symptomology "at particular moments in time." Def. Br. 9. Plaintiff's treatment records from Dr. Mitchell show that Plaintiff has bipolar II disorder with rapid mood cycling. Tr. 295–347. Dr. Mitchell concluded the MRFC by stating Plaintiff's mental

---

[4] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998) (citation omitted). The GAF scoring rubric has been deemed unreliable by the American Psychiatric Association and was dropped from the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders "for several reasons, including its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See* Am. Psychiatric Ass'n, Diagnostic and Stat. Manual of Mental Disorders 16 (5th ed. 2013).

condition is "not predictable" and is "unstable," with rapid shifts in "mood state" punctuated by moments of being "generally OK and unimpaired." Tr. 435. At most the GAF scores suggest that there are times when Plaintiff does not show severe symptoms, but because Plaintiff's assessments are consistent with the rapid cycling of his bipolar disorder, the Court finds the GAF scores do not "provide serious doubt that Plaintiff [is] actually disabled" as the Commissioner contends. Tr. 295–347; Def. Br. 9.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for the immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED:_____September 17, 2020_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge

13 – OPINION & ORDER